Filed 6/24/21  In re K.B. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | B308059 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 18CCJP08103C) |
| Plaintiff and Respondent, | |
| v. | |
| T.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

T.B. (Father) and N.C. (Mother) are the parents of a daughter, K.B. (Minor), who was seven weeks old when the Los Angeles County Department of Children and Family Services (the Department) commenced dependency proceedings.  The juvenile court found dependency jurisdiction was warranted because Mother had a history of substance abuse and was a current user of methamphetamine and because Father knew of Mother's substance abuse but failed to protect Minor.  Only Father appeals the jurisdiction finding against him and we consider whether Father's appeal is justiciable in light of the uncontested jurisdiction finding against Mother.

## I.  BACKGROUND

### A.     *The Referral and Minor's Detention*

In February 2020, the Department received a referral alleging general neglect of Minor, who was less than a week old at the time.  In response, a Department social worker interviewed Mother and Father at their home.

Mother admitted to using methamphetamine in the past and to testing positive eight months earlier, but she claimed she had tested negative more recently.  Father also admitted to using methamphetamine in the past and to testing positive eight months earlier, but he too denied any recent use.  Mother told the social worker that her two older children, who had been removed from her care because of her substance abuse, were scheduled to be reunited with her later that month.

Shortly after reuniting with her two older children, however, Mother used methamphetamine while on a trip to the store to purchase baby formula for Minor.  Father was upset after learning of Mother's relapse, but he elected not to immediately

2

inform the Department, believing that he and Mother could address her relapse on their own.  Father believed Mother's relapse was a "one time slip up" and she had "learned her lesson."

Mother, however, eventually admitted to the Department that she had relapsed.  She explained she thought it happened as a result of the stress of caring for Minor and her half siblings.  The Department had Mother sign a safety plan in which she committed to submit to drug testing and to participate in an aftercare program.  The Department advised Mother that if she failed to adhere to the terms of the safety plan, her children would be removed from her care.

Mother later did not live up to her safety plan obligations: she missed a scheduled drug test and did not attend the aftercare program.  The Department, pursuant to a court order, removed Minor and her half siblings from Mother's care, placed the two older siblings in foster care, and, pursuant to Mother's agreement to move out of the family home, placed Minor in Father's care.

### B.  The Petition and Post-Petition Investigation

Less than a week after Minor was removed from Mother's care, the Department received another general neglect referral, this one arising from Father's decision to allow Mother to move back into the family home.  The Department promptly sought an order removing Minor from Father's care.  Then, on July 7, 2020, the Department filed a two count petition asking the juvenile court to assume jurisdiction over Minor under Welfare and Institutions Code section 300.[1]

---

[1]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

The petition alleged Minor was at substantial risk of suffering serious physical harm due to Mother's substance abuse and Father's failure to protect Minor from the dangers arising from that abuse. The juvenile court ordered Minor detained from Mother, denied the Department's request to remove Minor from Father, and placed Minor in Father's care under the Department's supervision. Shortly after the detention hearing, Mother moved back out of the family home.

In advance of the adjudication hearing, a Department dependency investigator interviewed Father. He stated that when he and Mother were first together, approximately twelve years earlier, they had both used methamphetamine. Father conceded he still has urges to use drugs but he said he does not give into those cravings because it is not worth it.[2] Father acknowledged it was possible Mother would relapse yet again but stated he was not concerned she would because she knew she "messed up" and was doing everything she could to be reunited with her children. Father told the investigator that while he believed Mother would benefit from substance abuse counseling, it was not essential because "she knows what to do and what not to do." Father also explained that when he allowed Mother back into the family home, a decision that prompted the second neglect referral and the filing of the dependency petition, neither Minor nor the other children were then at home; they were staying with Father's mother at the time.

Mother refused to make herself available for an interview by the dependency investigator. The investigator, however, was

---

[2] During the dependency proceedings, the results from Father's drug tests were consistently negative.

able to interview Mother's substance abuse counselor who said Mother "doesn't utilize what she learns in class," "minimizes why she uses," and is "very impatient dealing with long term goals."[3]

In June 2020, Mother again tested positive for methamphetamine. At the time, Mother was participating in a 30-day outpatient program following her relapse three months earlier. Although she had relapsed twice in a three-month period, Mother stated she did not want to complete either an inpatient or an outpatient treatment program. Father continued to remain in a relationship with Mother and did not rule out the possibility of her moving back into the family home. Five weeks after her second relapse, and approximately one month before the adjudication hearing, Mother once more tested positive for methamphetamine.

### C.     *Adjudication and Disposition*

In August 2020, the juvenile court held a jurisdiction and disposition hearing. Various reports and court documents offered by the Department were admitted in evidence and no witnesses testified.

The juvenile court dismissed the allegation in the amended petition alleging Minor was at risk from Father's substance abuse because there was no evidence Father was currently using drugs. But the court sustained the petition's allegation that Minor was

---

[3]     The Department filed a first amended petition alleging Minor was at risk due to Father's history of substance abuse, his current cravings to use drugs, and his decision to allow Mother back into the family home after Minor and his half siblings were detained from Mother.

at substantial risk of suffering serious physical harm from Mother's substance abuse and from Father's failure to protect Minor from that abuse.  The court explained Father's decision-making showed "a lack of protective ability," especially in light of Minor and her half siblings' tender ages.

The juvenile court ordered Minor removed from Mother's custody and care and placed with Father.  In addition, the court ordered family reunification services for Father and family enhancement services for Mother.

## II.  DISCUSSION

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*), quoting *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 (*Alexis E.*); see also *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 [dependency law's primary concern is the protection of children] (*I.A.*).)  The juvenile court found Minor was at substantial risk of suffering serious physical harm from Mother's methamphetamine abuse and Father (appropriately) does not challenge that finding—which alone justifies dependency jurisdiction over Minor.  We therefore need not consider the sufficiency of the evidence to support the juvenile court's jurisdictional finding that is specifically adverse to Father.  (*I.A.*, *supra*, at 1492 ["For jurisdictional purposes, it is

6

irrelevant which parent created [the] circumstances" triggering jurisdiction]; see also *In re Briana V.* (2015) 236 Cal.App.4th 297, 308; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 ["[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent"].)

Although we affirm the juvenile court's jurisdiction finding for this reason, we nevertheless opt to briefly describe, for Father's benefit, why the sustained dependency allegation as against him was supported by substantial evidence. (*Alexis E.*, *supra*, 171 Cal.App.4th at 451 [affirming finding of jurisdiction over the minor because of an uncontested basis for jurisdiction but "not[ing]" the court's view on the challenged finding "for [the] Father's benefit"]; see also *I.J.*, *supra*, 56 Cal.4th at 773.)

"Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse.' (§ 300, subd. (b)(1).)" (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) There is no dispute that Mother suffered from an unresolved substance abuse problem—one of which Father was well aware. Notwithstanding Mother's ongoing struggle with methamphetamine, which posed an obvious risk to Minor's safety, Father did not report Mother's initial relapse to the Department, allowed her to return to the family home in contravention of the conditions of Minor's initial

removal from Mother's care, and minimized the need for a rehabilitation program at the same time Mother was missing drug tests and suffering further relapses. This is ample evidence of a failure to protect justifying the adverse section 300 jurisdiction finding against Father.

## DISPOSITION
The juvenile court's jurisdiction finding is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.


We concur:



RUBIN, P. J.



MOOR, J.